UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON JONES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. CV 09-4562-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his applications for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") failed to provide legally sufficient reasons for rejecting the testimony of a medical expert who opined that Plaintiff could no more than occasionally use his right hand in handling and grasping. (Joint Stip. at 3-5.) For the following reasons, the Agency's decision is affirmed.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB and SSI on May 15, 2006, alleging that he had been unable to work since September 19, 2005, due to carpal tunnel syndrome. (Administrative Record ("AR") 99-103, 128.) The Agency denied the applications initially and on reconsideration. (AR 48-49, 51-60.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 63-65.) Plaintiff appeared with counsel and testified at the hearing on March 5, 2008. (AR 24-47.) On May 29, 2008, the ALJ issued a decision denying benefits. (AR 8-18.) The ALJ concluded that Plaintiff could perform his past work as an office manager, which necessitated frequent use of his right hand, despite his history of carpal tunnel syndrome. (AR 17.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-7.) He then commenced the instant action.

## III. DISCUSSION

In his sole claim of error, Plaintiff contends that the ALJ erred by failing to provide legally adequate reasons for rejecting the opinion of the non-treating, non-examining medical expert Dr. Harvey Alpern. (Joint Stip. at 3-5.) Dr. Alpern testified that Plaintiff could only occasionally grasp and handle objects with his right hand due to carpal tunnel syndrome. (AR 38.) According to the vocational expert, Plaintiff would be unable to work as an office manager with this limitation. (AR 42-44.) The ALJ rejected Dr. Alpern's opinion and concluded, instead, that Plaintiff could use his right hand frequently and, therefore, could work.

Plaintiff contends that the ALJ erred in reaching this conclusion because he failed to cite legally sufficient reasons for doing so. (Joint Stip. at 3, 5.) He argues that the fact that the ALJ called

Dr. Alpern to testify at the hearing by itself shows that the medical record regarding Plaintiff's limitations was not clear. (Joint Stip. at 9.) He argues further that the state agency reviewing physician's opinion should be discounted because he relied on incomplete treatment records. (Joint Stip. at 9.) Plaintiff further contends that Dr. Yu's opinion is inconsistent with the other medical evidence in the record and, therefore, cannot support the ALJ's decision. (Joint Stip. at 9, 10.) For the following reasons, the Court disagrees.

The review of the medical evidence shows the following: A January 25, 2006 progress note showed that Plaintiff complained of tingling and stinging in his right wrist, but an examination failed to produce positive results for Tinel's sign or Phalen's maneuver--the two tests used to diagnose carpal tunnel syndrome--and neither wrist was tender to palpation. (AR 188.) Plaintiff's doctor prescribed Naprosyn and advised him to wear wrist supports. (AR 188.) On March 7, 2006, Plaintiff complained of worsening wrist pain, with little relief from Naprosyn. (AR 187.) This time, the doctor's examination revealed positive Tinel's sign and reduced grip strength in Plaintiff's right hand, but a negative Phalen's on both wrists, and no reduction in range of motion. (AR 187.) Plaintiff was advised to wear braces at night and when using a computer, apply hot and cold compresses, and take Motrin. (AR 187.) An April 24, 2006 progress note reported that Plaintiff "has developed carpal tunnel syndrome," was wearing a wrist support on his right wrist, and was not taking medication at that time. (AR 209.) Plaintiff was referred to physical therapy. (AR 254.) Plaintiff was discharged from physical therapy after failing to show up for an appointment in June 2006, because his referral had expired. (AR 180).

1     In October 2006, the Agency ordered a consultative orthopedic
2 examination due to the lack of current physical examination findings.
3 (AR 243.)  On October 22, 2006, Dr. Yu performed that examination,
4 noting Plaintiff's history of carpal tunnel, as well as "significant
5 guarding" of his right wrist and forearm.  (AR 193, 194.)  He found no
6 gross atrophy in that arm or wrist, but did note a positive Tinel's
7 sign over the cubital tunnel, as well as non-radiating pain.  (AR
8 194.)  He found a normal range of motion in Plaintiff's hands, but no
9 grip strength in his right hand, and 4/5 motor strength throughout his
10 right hand "secondary to guarding."  (AR 194-95.)  Dr. Yu diagnosed
11 myofascial pain in Plaintiff's right arm and wrist with a history of
12 right carpal tunnel syndrome, and concluded that Plaintiff would be
13 limited to no more than frequent use of his right hand for pushing,
14 pulling, fine finger motor movements, and handling.  (AR 196.)
15     On November 13, 2006, reviewing state agency physician Dr. M.
16 Sohn found, like Dr. Yu, that Plaintiff could frequently use his right
17 hand and arm in handling and fingering activities.  (AR 240.)
18     A December 18, 2006 physical therapy referral note stated that
19 Plaintiff's right carpal tunnel syndrome had improved, but that
20 Plaintiff now complained of right shoulder tenderness.  (AR 173.)
21     At the March 5, 2008 hearing, Dr. Alpern testified that Plaintiff
22 "probably" had carpal tunnel syndrome, but remarked that it had never
23 been appropriately diagnosed because nerve conduction studies to
24 confirm the diagnosis had never been done.  (AR 37.)  In Dr. Alpern's
25 opinion, Plaintiff had "something in the right hand that would
26 restrict him."  (AR 37.)  Dr. Alpern concluded that, based on his
27 review of the records, Plaintiff could lift 20 pounds occasionally and
28

ten pounds frequently, and would be limited to occasional grasping and handling with his right hand.[1]  (AR 38.)

It is clear from reading the ALJ's decision that he read and considered all of the available medical evidence.  (AR 14-17.)  Ultimately, he accepted Dr. Yu's opinion that Plaintiff could frequently use his right hand over Dr. Alpern's that he could only use it occasionally.  (AR 16, 17.)  In doing so, the ALJ noted that Dr. Alpern testified that Plaintiff's "carpal tunnel syndrome had not been fully diagnosed, in that no nerve conduction study ha[d] been performed and that the objective evidence was mixed (i.e., negative Phalens/Tinels)."  (AR 17.)

The Court concludes that the ALJ did not err in discounting Dr. Alpern's testimony.  Faced with conflicting medical opinions as to how much Plaintiff was limited as a result of his impairment, the ALJ accepted the opinion of the examining physician over the opinion of the non-examining physician and set forth his reasons for doing so.  This is what ALJs are supposed to do.  *See*, *e.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ's reliance on Dr. Yu's opinion over Dr. Alpern's was consistent with the established "hierarchy" of medical source opinions, as set forth in the governing law and regulations.  *See*, *e.g.*, *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (explaining that the treating doctor's opinion is entitled to the greatest weight, followed by the opinion of an examining doctor, followed by the opinion of a non-examining doctor).

---

[1] Medical records submitted after the hearing show that on March 19, 2008, Plaintiff was apparently referred for an MRI of his cervical spine, and an electromyography (EMG) test on his right upper extremity.  (AR 171-72.)  The record does not contain the results of any such testing.

Even though a non-examining doctor's opinion, such as Dr. Alpern's, *may* serve as substantial evidence to reject another doctor's opinion when the non-examining doctor's opinion is consistent with other independent evidence in the record, *id.* at 831; *Andrews*, 53 F.3d at 1041, it is also clear that the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). Here, the ALJ was entitled to accept the opinion of a doctor who had actually examined Plaintiff over the opinion of a doctor who had not. *See also Ryan v. Comm'r, Soc. Sec.*, 528 F.3d 1194, 1201-02 (9th Cir. 2008) (reversing ALJ's decision to reject examining doctor's opinion in favor of non-examining opinions without providing "specific and legitimate reasons" for doing so).[2]

Moreover, where, as here, the ALJ "summarized the facts and conflicting evidence in a detailed and thorough manner, stating his interpretation and making findings[,]" his conclusion is entitled to deference. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Plaintiff's argument that, once the ALJ decided to call a medical expert to testify at the hearing, he was required to accept his testimony, (*see* Joint Stip. at 9-10), finds no support in the record or the governing legal authority. On the contrary, the ALJ was entitled to conclude that the lack of diagnostic testing, as noted by Dr. Alpern himself,

---

[2] Citing *Andrews*, 53 F.3d at 1041, Plaintiff argues that a non-examining physician's opinion is entitled to *some* weight. (Joint Stip. at 9.) The Court agrees. But that is not the issue here. The ALJ gave some weight to Dr. Alpern's testimony, he merely gave it less weight than Dr. Yu's, which he was allowed to do.

the relatively scant treatment history, and Dr. Yu's examination findings all showed that Plaintiff was not as functionally limited as Dr. Alpern concluded. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (noting "[w]here evidence is susceptible to more than one rational interpretation," ALJ's conclusion will be upheld.). For these reasons, this claim does not require remand or reversal.[3]

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: June 22, 2010.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JONES\Memo_Opinion.wpd

---

[3] The Court has also considered Plaintiff's argument that the "new" records from Hubert Humphrey Health Center undercut the Agency's decision that Plaintiff is not disabled. The Court has considered these records (AR 169-83), some of which had been before the ALJ (AR 251-56), and concludes that they do not so undermine the ALJ's decision as to require remand.